IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| RYAN SAWYERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22-cv-00667 |
| | ) |
| PRINCE WILLIAM COUNTY SCHOOL BOARD, et. al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant Michael Bishop's Motion for Summary Judgment, Defendant Prince William County School Board's Motion for Summary Judgment, and Plaintiff Ryan Sawyers' Motion for Summary Judgment as to Defendant Michael Bishop.

The Prince William County Public Schools ("PWCS") is located in Virginia and is operated by Defendant Prince William County School Board (the "School Board"). Plaintiff Ryan Sawyers is a former Chair At-Large of the School Board, having served from January 2016 through the beginning of March 2018, when he resigned. Defendant Dr. Michael Bishop ("Dr. Bishop") serves as the principal of Patriot High School ("Patriot HS"), a position he has held since July 1, 2010 prior to the school's opening.

1

Plaintiff and Dr. Bishop first met in 2012 and since meeting, they have had numerous conflicts with each other. Before running for an elected seat on the School Board, Plaintiff filed a written complaint with PWCS about Dr. Bishop. After he was elected to the School Board in 2016, Plaintiff shared his opinion on why Dr. Bishop should not remain a principal in PWCS. While chair of the School Board, Plaintiff personally sued the Superintendent of PWCS, as well as the Division Counsel of PWCS.

On July 23, 2013, at 10:50 p.m., Dr. Bishop created an account on Twitter with the handle @PioneersPHS (the "Twitter Account"). The email for this Twitter Account was mebishop42@icloud.com, and Dr. Bishop opened it on his own volition, without the knowledge, input, approval, or any other type of involvement by the School Board.

Twitter is a social networking site that allows users with accounts to post limited character status updates, known as "tweets," that can be seen by, among others, anyone who has chosen to follow a user. Twitter allows users to control how they interact with other accounts on Twitter, including the ability to "block" or restrict specific accounts from contacting them, seeing their tweets, and following them.

Dr. Bishop created and used the Twitter Account as a personal account about his profession and in conjunction with

2

his personal interests, including inspirational quotes, matters about professional athletes, and internet memes. Dr. Bishop never used his Twitter Account for governance of Patriot HS or to solicit input from the community on policy or other issues in his role as principal of Patriot HS, and he did not create his Twitter Account to obtain feedback from the school community or the public at large. The photo on Dr. Bishop's Twitter Account is not the official logo of Patriot HS.

Dr. Bishop is the sole owner and operator of the Twitter Account, and he has made all decisions about how the account is used. The School Board did not direct Dr. Bishop to create the Twitter Account, it has no access to the log in credentials for the Twitter Account, and it cannot block or unblock users. Further, the Twitter Account is not recognized as an official Twitter account for Patriot HS or for PWCS by the Communications Department. From the date when Dr. Bishop created his Twitter Account until this lawsuit was filed, the Twitter Account was open to the public. Once Dr. Bishop was aware of this lawsuit, he made the Twitter account private.

PWCS's official website for Patriot HS links to the official Twitter account for Patriot HS, which is @THEPatriotHS. The PWCS website does not link to or recognize Dr. Bishop's Twitter Account.

When Dr. Bishop created the Twitter Account in 2013, PWCS did not have any regulations or policies on social media. Prior to this suit being filed, Dr. Bishop blocked Plaintiff from following or viewing the Twitter Account. No PWCS policy or regulation, nor any action of the School Board, was involved in this decision to block Plaintiff.

Dr. Bishop blocked Plaintiff before any interaction between them occurred on Twitter. Plaintiff learned of the Twitter Account on April 24, 2022, when a friend sent him a picture Dr. Bishop had posted on the Twitter Account. Meaning, Plaintiff did not know Dr. Bishop blocked him from the Twitter Account prior.

In September 2016, the Patriot HS Instructional Technology Coach created the official PWCS Twitter account for Patriot HS with the handle @THEPatriotHS and was the main manager of the account during his time at Patriot HS. Dr. Bishop approved the creation of @THEPatriotHS as Patriot HS's official Twitter account but did not have control over the account. Patriot HS used the @THEPatriotHS as an official communications channel to provide information about school news, announcements, events, and activities. PWCS recognizes @THEPatriotHS as the official Twitter account for Patriot HS and it appears on the Communications Department's list of official social media accounts. Further, PWCS's official website for Patriot HS links to @THEPatriotHS as the official Twitter account.

On September 25, 2019, PWCS adopted Regulation 910-1, PWCS's first regulation relating to social media use and interaction. Regulation 910-1 provided guidance about how to establish an official PWCS school social media account, which required prior approval of the principal or program manager and that official PWCS accounts be created with a PWCS email address only. On December 9, 2020, PWCS revised Regulation 503-1 to provide the additional requirement that all "PWCS official social media accounts established pursuant to Regulation 910-1...must have more than one staff member actively monitoring the account."

The practice of the Communications Department for a school social media account owned and operated by PWCS is to have these features: the password and user name for the account must be known by and controlled by the school; the account has to have a handle or user name associated with the school; it has to have two PWCS moderators; it has to be the social media account advertised on the public website of the school; and it must be recognized as a PWCS social media account by the PWCS Communications Department.

Plaintiff filed this suit against the School Board and Dr. Bishop in his personal capacity on June 11, 2022 and then filed an Amended Complaint on August 18, 2022. The Amended Complaint alleges in Counts I and II a "Violation of Civil Rights: Section

5

1983 Claim for Violation of First Amendment Rights" against Dr. Bishop and the School Board. Count III of the Amended Complaint appears to restate the same claim against the School Board.

Motions for Summary Judgment were filed by Defendants Dr. Bishop and the School Board on May 12, 2023. Plaintiff filed a Motion for Summary Judgment as to Defendant Dr. Bishop on May 13, 2023.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

Dr. Bishop argues in his Motion that Plaintiff lacks standing, his creation and use of the Twitter Account was not under the color of law, the Twitter Account was not a public forum thus there was no First Amendment violation, and even if

6

there was a First Amendment violation, Dr. Bishop is entitled to qualified immunity.

The School Board argues in its Motion that the Twitter Account is Dr. Bishop's personal account, there is no underlying constitutional violation giving rise to Monell liability because the Twitter Account is not a public forum, even if it is found to be a public forum, it is not liable for deliberate indifference, Plaintiff lacks standing, and the statute of limitations bars Plaintiff's claims against it.

The first issue to determine is whether Plaintiff has Article III standing to bring this suit. To establish Article III standing, a plaintiff must prove that: "1) he or she suffered an 'injury in fact' that is concrete and particularized, and is actual or imminent; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) the injury likely will be redressed by a favorable decision." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 629 F.3d 387, 396 (4th Cir. 2011).

"Injury in fact is 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018). (quoting Spokeo, Inc. v. Robins, 578 U.S. 330 (2016)). Since Plaintiff seeks declaratory and injunctive relief, he must establish an ongoing or future

7

injury in fact. "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding in junctive relief...if unaccompanied by any continuing, present adverse effects,'" a plaintiff seeking "declaratory or injunctive relief...must establish an ongoing or future injury in fact." Id. at 287-88 (quoting O'Shea v. Littleton, 414 U.S. 488 (1974)).

The Fourth Circuit has held that "standing requirements are somewhat relaxed in First Amendment cases." Cooksey v. Futrell, 721 F.3d 226, 235 (4th Cir. 2013). This is particularly true for the injury in fact requirement. Id.

While Plaintiff has not attempted to follow the Twitter Account at the time these Motions were filed, Plaintiff still states his interest in interacting with the Twitter Account. There are other ways of interacting with Twitter accounts that do not involve following it, including replying, retweeting, and liking posts, which are allowed even if an account is not following another account set to public. Further, Dr. Bishop has not disavowed future enforcement or deleting of posts by other Twitter users. See Davison v. Randall, 912 F.3d 666 (4th Cir. 2019). Plaintiff has Article III standing to bring this suit.

The next issue is whether Dr. Bishop acted under color of law when he operated the Twitter Account and blocked Plaintiff.

Under 42 U.S.C. § 1983, a plaintiff must prove they were deprived of "a right secured by the Constitution and laws of the United States," and that the deprivation "was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48-49 (1988). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West, 487 U.S. at 49-50 (internal citations omitted).

What is fairly attributable to the state and constitutes action under color of law, "is a matter of normative judgment, and the criteria lack rigid simplicity." Holly v. Scott, 434 F.3d 287, 292 (4th Cir. 2006)(quoting Brentwood Acad. V. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 121 (2001)). The court must analyze the totality of the circumstances to determine if the action at issue "bore a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself,'" Rossignol v. Voorhaar, 316 F.3d 343, 525 (4th Cir. 2003)(quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)).

The facts in this case show Dr. Bishop set up the Twitter Account on his own in 2013. He also set up his Twitter Account without the permission or input from PWCS and has always operated it by himself. Dr. Bishop did not create the Twitter Account pursuant to PWCS Regulation 910-1, he created it five

9

years before the regulation existed. Further, he did not operate it as a PWCS account under Regulations 910-1 or 503-1 once they existed.

The Twitter Account Dr. Bishop created, did not have any language indicating it was the "official" account for Patriot HS or PWCS. Nor was there any statement that it was an official source of information about Patriot HS. Also, the location designated on the Twitter Account listed the location as "Best High School in the Nation" and not the official address.

Patriot HS does have an official Twitter account which does use language indicating it is the official account and source of information. The facts also establish that PWCS does not recognize the Twitter Account as its official social media account for Patriot HS. Instead, @THEPatriotHS is PWCS's official Twitter account for the school and is linked to the Patriot HS website.

Further, Dr. Bishop did not create and administer the Twitter Account to perform actual or apparent duties of his job, and at no point following the creation of the Twitter Account did it become part of his duties as principal. Even though Dr. Bishop is the principal of Patriot HS and many of his posts on the Twitter Account were related to Patriot HS, simply working for a school does not vest an employee with the unilateral power

to open a First Amendment public forum on a personal social media account.

The undisputed material facts establish that the creation and operation of the Twitter Account was a personal action of Dr. Bishop's outside the control of the School Board. Dr. Bishop did not act under color of law when he created and operated the Twitter Account nor when Dr. Bishop blocked Plaintiff from the Twitter Account. The Twitter Account is not a First Amendment public forum.

Next, the issue of whether the same reasoning in Davison v. Randall extends to Dr. Bishop as the Principal of Patriot HS under the facts in this case. 912 F.3d 666 (4th Cir. 2019).

In Davison, the Fourth Circuit held that, in some cases, an elected official's personal social media account can become a First Amendment public forum. "In the context of an alleged First Amendment violation, in particular, this Court has found that a challenged action by a governmental official is fairly attributable to the state when 'the sole intention' of the official in taking the action was 'to suppress speech critical of his conduct of official duties or fitness for public office.'" Davison, 912 F.3d at 680 (quoting Rossignol v. Voorhaar, 316 F.3d 516, 524 (4th Cir. 2003)). The following facts were considered by the Court in Davison:

>      (1) the title of the page includes [Randall]'s title; (2) the page is categorized as that of a government official; (3) the page lists as contact information [Randall]'s official County email address and the telephone number of [Randall]'s County office; (4) the page includes the web address of [Randall]'s official County website; (5) many—perhaps most—of the posts are expressly addressed to "Loudoun," [Randall]'s constituents; (6) [Randall] has submitted posts on behalf of the [Loudoun Board] as a whole; (7) [Randall] has asked her constituents to use the [Chair's Facebook Page] as a channel for "back and forth constituent conversations"; and (8) the content posted has a strong tendency toward matters related to [Randall]'s office.

While Davison decided that an elected municipal chairperson can create a public forum on a personal social media account, that analysis did not include public employees such as high school principals, and this court will not extend the rational to this case. The facts present in Davison that led to the decision, are not present in this case.

Further the operator of the social media account in Davison made posts to encourage discourse with the public in his official capacity. Plaintiff argues the content Dr. Bishop posted on his account and the content's relationship to Patriot HS shows the Twitter account is a public forum. However, Dr. Bishop did not invite the same type of discourse on the Twitter Account as was done in Davison.

An individual's unilateral choice to post content on social media related to a job or an employer does not transform that social media account into an account controlled or owned by an

12

employer, and Plaintiff can point to no PWCS policy or regulation that supports such a claim.

Dr. Bishop did not act under color of law to create a public forum on the Twitter Account. Thus, there was no First Amendment violation when Dr. Bishop blocked Plaintiff from the Twitter Account. Therefore, there is no underlying constitutional violation to give rise to Monell liability against the School Board. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978).

For the foregoing reasons, Defendants' Motions for Summary Judgment should be granted.

An appropriate Order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
September 25, 2023

13